# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| JESSICA HOBBS, as personal representative of Stephen Hobbs, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| LEE POWELL; JAMES WHITMAN; DEBORAH HARDY; BRIAN LOLLEY; CHARLES BAKER; RICK HARRIS; CORRECTIONAL MANAGED CARE CONSULTANTS, LLC; and GEORGE A. LYRENE, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 6:14-cv-1113-SLB

## MEMORANDUM OPINION

This case is before the court on Defendants Powell, Whitman, Hardy, Lolley and Baker's Motion to Dismiss Count III of the Amended Complaint, (Doc. 34),[1] Motion to Dismiss of George A. Lyrene, M.D., (Doc. 38), and Defendants Powell, Whitman, Hardy, Lolley, and Baker's Motion to Dismiss Count III of the Amended Complaint and First Amendment to Amended Complaint,[2] (Doc. 53). Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the

---

[1] Reference to a document number, ["Doc.     "], refers to the number assigned to each document as it is filed in the court's record.

[2] Because defendants do not address their Motion to Dismiss Count III of plaintiff's Amended Complaint in detail in defendants' second Motion to Dismiss, (Doc. 58), the court will address each motion in turn, in addition to addressing the Motion to Dismiss filed by Lyrene, (Doc. 38).

opinion that Defendants Powell, Whitman, Hardy, Lolley and Baker's Motion to Dismiss Count III of the Amended Complaint, (Doc. 34), is due to be denied. Defendants Powell, Whitman, Hardy, Lolley, and Baker's Motion to Dismiss Count III of the Amended Complaint and First Amendment to Amended Complaint, (Doc. 53), is due to be granted as to Count IV of plaintiff's First Amendment to Amended Complaint and denied as to Count III of plaintiff's Amended Complaint, and the Motion to Dismiss of George A. Lyrene, M.D., (Doc. 38), is due to be denied.

## MOTION TO DISMISS STANDARD

Defendants Powell, Whitman, Hardy, Lolley, and Baker (hereafter, "defendant jailers") have moved to dismiss Count III of plaintiff's Amended Complaint and Count IV of plaintiff's First Amendment to Amended Complaint for failure to state a claim upon which relief may be granted.[3] (Docs. 34 and 53.) Additionally, Lyrene has moved to dismiss Counts I and II of plaintiff's Amended Complaint for failure to state a claim against him upon which relief may be granted. (Doc. 38.) The purpose of such motions, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of the plaintiff's statement of his claims for relief. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997). Rule 12(b)(6) must be read together with Rule 8(a)(2), which "requires that a pleading contain a short and plain statement of the claim showing that

---

[3] Defendant jailers also move to dismiss Count III pursuant to Rule 12(b)(1). (Doc. 35 at 1.)

the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal citations and quotation marks omitted).

To survive a 12(b)(6) motion, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and footnote omitted). The plaintiff need not prove his case but must plead "enough facts to state a claim to relief that is *plausible* on its face." *Id.* at 570 (emphasis added).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Further, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, while the court must accept all factual

allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted). "In considering a motion to dismiss, a court should eliminate any legal conclusions contained in the complaint, and then determine whether the factual allegations, which are assumed to be true, give rise to relief." *Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 482-83 (11th Cir. 2011) (citing *Am. Dental Ass'n*, 605 F.3d at 1290).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[4]

Plaintiff Jessica Hobbs, the widow of Stephen Hobbs ("Hobbs"), a former inmate at Winston County Jail, brings this action as the personal representative of her deceased husband. (Doc. 30 ¶¶ 1, 5.) During the relevant time period, defendant Rick Harris was the sheriff of Winston County. (*Id.* ¶ 11; *see also* Doc. 35 at 2.) Lee Powell was the captain in charge of guards at Winston County Jail, (*id.* ¶ 6), and James Whitman, Deborah Hardy, Brian Lolley, and Charles Baker were guards at Winston County Jail, (*id.* ¶¶ 7-10). Also during this period, Dr. George Lyrene was a physician contracted to provide medical care to Winston County Jail inmates. (*Id.* ¶ 13.) Lyrene provided this care through Correctional Managed Care Consultants, LLC, ("CMCC") an entity Lyrene incorporated in March 2008. (*Id.* ¶ 12.)

---

[4] The facts are drawn from the Amended Complaint, (Doc. 30), and are accepted as true for purposes of the Motions to Dismiss. *See Twombly*, 550 U.S. at 572.

By July 2012, Hobbs began experiencing a toothache. (Doc. 30 ¶ 14.) At several times "[l]eading up to the end of 2012," Hobbs completed medical request forms complaining about his toothache and seeking treatment for it. (*Id.* ¶ 16.) At one point, Hobbs made a complaint to Harris while Harris was assisting guards during a mealtime, and Hobbs also "requested medical care or assistance from several guards, including James Whitman, Deborah Hardy, Brian Lolley and Charles Baker." (*Id.*  ¶¶ 15, 17.) Lyrene and CMCC ignored the medical request forms and ignored requests for Hobbs's treatment made by Hobbs through jail personnel, including some of the other defendants. (*Id.* ¶ 38.) At no point did Lyrene or CMCC treat plaintiff for his abscessed tooth or for symptoms of an abscessed tooth. (*Id.*) Although Hobbs could purchase pain medication with his money, no one provided medical care to Hobbs during this time. (*Id.* ¶ 18.)

Around December 31, 2012, Hobbs's toothache caused noticeably severe swelling that required immediate medical attention. (*Id.* ¶ 19.) The next day, "a Winston County guard—either Whitman, Hardy, Lolley or Baker—came to the door of the day room and observed Hobbs through a window of a locked door." (*Id.* ¶ 20.) At this point, Hobbs was in extreme pain and his swelling was such that any reasonable person would know that he required immediate medical attention. (*Id.*) Thirty minutes later and just prior to lunchtime, Powell locked the other inmates down and went to see Hobbs. (*Id.* ¶ 21.) The following day, at least one inmate told Powell that Hobbs's condition was serious and required medical attention, and Powell responded, "I'm doing all I can for him." (*Id.* ¶ 22.) During one of his

interactions with Powell that day, Hobbs told Powell that his health insurance could pay for any medical treatment he received. (*Id.* ¶ 23.) Later that day, Powell and another guard went to Hobbs's cell and stayed for five to ten minutes. (*Id.* ¶ 24.) Hobbs's condition remained severe, and his need for immediate medical attention was obvious. (*Id.*)

The next day, January 3, 2013, Powell entered the jail day room around 5:30 a.m., saw Hobbs, and told Hobbs that he should be able to send Hobbs to the doctor or release him from jail that day. (*Id.* ¶ 25.) Later that day, "certain Winston County officials—likely Rick Harris—called a Winston County district judge and requested that he order Hobbs released, which he did via an oral order that he memorialized into a written order signed on January 7, 2013, and filed on January 14, 2013." (*Id.* ¶ 26.) At some time before Hobbs's release from jail, Lyrene and/or agents of CMCC "observed Hobbs[] through the window of a locked door but did not examine him in any way or refer him for any care." (*Id.* ¶ 30.) Around lunchtime, Powell returned to the day room to release Hobbs. (*Id.* ¶ 27.) "Hobbs was set free around this time and left to his own devices." (*Id.* ¶ 28.) Hobbs called for an ambulance, which transported him to Walker Baptist Medical Center around 1:30 p.m. (*Id.*) Hobbs died at approximately 3:45 p.m. (*Id.* ¶ 29.)

**DISCUSSION**

## I. MOTIONS TO DISMISS FILED BY POWELL, WHITMAN, HARDY, LOLLEY, AND BAKER

Defendant jailers move to dismiss Count III of plaintiff's Amended Complaint, (Doc. 30), based upon the immunity granted to corrections officers working in sheriffs' jails pursuant to Ala. Code § 14-6-1, and move to dismiss Count IV of plaintiff's First Amendment to Amended Complaint, (Doc. 48), on the ground that the Alabama Legislature properly exercised its police power to expand immunity to sheriffs' jail personnel. (Doc. 53 ¶¶ 1, 3.)

### A. Constitutionality of Act No. 2011-685

Before determining whether defendant jailers are entitled to immunity pursuant to § 14-6-1, the court must first determine whether Act No. 2011-685, amending § 14-6-1 to extend immunity to jailers and other county jail employees, is unconstitutional. Article I, § 14 of the Alabama Constitution of 1901 bars a suit in tort against sheriffs and deputy sheriffs. *See Parker v. Amerson*, 519 So. 2d 442, 446 (Ala. 1987); *Hereford v. Jefferson Cnty.*, 586 So. 2d 209, 210 (Ala. 1991). In *Ex Parte Shelley*, 53 So. 3d 887, 897 (Ala. 2009), the Alabama Supreme Court ruled that jailers were not entitled to the immunity granted by Art. I, § 14 of the Alabama Constitution of 1901, and shortly thereafter, the Alabama Legislature enacted Act No. 2011-685, which amended § 14-6-1 to create immunity for jail personnel.

7

In Count IV, plaintiff alleges that the Legislature's Act is unconstitutional because, unlike deputy sheriffs who share the same powers as sheriffs and are "the legal alter ego of" sheriffs, jailers "cannot properly be viewed in legal contemplation as the alter ego of, or an extension of the sheriff, or as one officer with the sheriff, because, unlike a deputy sheriff, a jailer cannot undertake every act that the sheriff could perform."[5] (Doc. 48 ¶¶ 57-59.) According to plaintiff, the "absolute State immunity provided by art. I, § 14 of the Alabama Constitution of 1901 may be extended only to a person who is an executive officer's alter ego." (*Id.* ¶ 63.) Plaintiff alleges that "[t]he Alabama Legislature's effort in Act No. 2011-685, to extend to jailers and other county jail employees 'the same immunities and legal protections granted to the sheriff under [ . . . ] the Constitution of Alabama of 1901,' is impermissible under the Constitution of Alabama of 1901, because the Legislature is without power to override express constitutional provisions by way of a statutory subterfuge." (*Id.* ¶ 65.) Plaintiff also alleges that the Alabama Legislature cannot extend immunity to jailers because "the Legislature's statutory authority over immunities extends only to local governmental entities, such as counties and municipalities, and does not extend to individuals, including individual employees of local governmental entities." (*Id.* ¶ 70.)

---

[5] The court notes that plaintiff served the Attorney General of the State of Alabama with a copy of her First Amendment to Amended Complaint, (Doc. 48), and the Attorney General "waive[d] any further service upon him of any pleadings, discovery and other matters filed in this cause and presently waive[d] the right to be heard." (Doc. 55.)

Section 14-6-1 provides as follows:

The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.

Ala. Code § 14-6-1. "[T]he presumption favoring constitutionality" is a "firmly ingrained principle of jurisprudence." *Reed v. Brunson*, 527 So. 2d 102, 112 (Ala. 1988). "[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government." *Alabama State Fed'n of Labor v. McAdory*, 18 So. 2d 810, 815 (Ala. 1944).

Defendant jailers contend that the Alabama Legislature's enactment of Act No. 2011-685 was permissible pursuant to its broad police powers. "The limitations upon the legislature's exercise of the police power are few . . . ." *Reed v. Bruson*, 527 So. 2d 102, 111 (Ala. 1988). In striking down common law municipal immunity, the Alabama Supreme Court has acknowledged "the authority of the legislature to enter the entire field, and . . . its superior position to provide with proper legislation any limitations or protections it deems necessary." *Jackson v. City of Florence*, 320 So. 2d 68, 75 (Ala. 1975).

9

The Constitution does not provide immunity for jailers, as the Alabama Supreme Court held in *Ex Parte Shelley* that Art. I, § 14 does not shield jail personnel other than sheriffs and deputy sheriffs from suit, but the Constitution does not prohibit the Legislature from creating immunity for jail personnel by statute. Plaintiff incorrectly assumes that, because the Alabama Constitution does not create immunity for jail personnel, the Legislature's Act, extending immunity to jailers, violates the Constitution. The absence of immunity for jailers in the Constitution is not synonymous with a prohibition against immunity for jailers.

Furthermore, the Alabama Legislature has authority to regulate tort claims against individuals. As defendant jailers point out, in *Reed v. Brunson*, the Alabama Supreme Court affirmed a legislative act creating immunity from suit for co-employees in certain circumstances, noting that "the Legislature expressed concern over the rising costs of litigation among co-employees, as well as the disruptive effect that such litigation can have on workers." 527 So. 2d at 120.

Plaintiff also argues that "the language of Act No. 2011-685 fails to state any legislative justifications or public policy rationales for its enactment . . . or any reasons its enactment could be in the public's interest." (Doc. 61 at 8.) However, the Legislature's failure to state a justification does not invalidate the legislation.

> Legislation which abolishes or alters a common-law cause of action, . . . or its enforcement through legal process, is automatically suspect under § 13 [of the Alabama Constitution]. It is not, however, automatically invalid.

10

*Grantham* [*v. Denke*, 359 So. 2d 785 (Ala. 1978)] itself restates the established rule that such legislation will survive constitutional scrutiny if one of two conditions is satisfied:

> 1. The right is voluntarily relinquished by its possessor in exchange for equivalent benefits or protection, or
>
> 2. The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power.

. . .

> Thus, a right may be abolished if the individual possessor receives something in return for it (the individual *quid pro quo* dwelt upon in *Grantham*), or if society at large receives a benefit (thereby justifying exercise of the police power).

*Reed*, 527 So. 2d at 115 (internal quotations omitted).

Defendant jailers assert that legislative intent may be determined from the "'attendant circumstances' surrounding the statute's enactment," *see First Nat'l Bank v. Jaffe*, 196 So. 103, 106 (Ala. 1940), and here, the Legislature enacted the Jailer Liability Protection Act in response to *Ex Parte Shelley*, (Doc. 62 at 3 (citing *Johnson v. Conner*, 754 F.3d 918, 920 (11th Cir. 2014)). Further, defendant jailers argue that, much like the cost-cutting rationale underlying the statute at issue in *Reed*, immunity for jail personnel curbs high litigation costs that may particularly result from "the relative ease with which pro se inmates could file [lawsuits]." (Doc. 62 at 5-6.)  *See Anderson v. Creighton,* 483 U.S. 635, 638 (1987) ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly

inhibit officials in the discharge of their duties.); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'") (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir.2001)); *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) ("In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995 . . . ."). The court finds that the Alabama Legislature permissibly enacted Act No. 6011-685 pursuant to its police power,[6] and thus, the remaining question is whether defendant jailers are entitled to the immunity granted to jail personnel by § 14-6-1.

**B. Section 14-6-1 Immunity**

Defendant jailers seek to dismiss Count III of the Amended Complaint, a state law wrongful death claim, on the basis of § 14-6-1 immunity pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. 35 at 1.) Defendant jailers emphasize the language in § 14-6-1 providing that

---

[6] While defendant jailers raise the possibility of this court certifying the question of Act No. 2011-685's constitutionality to the Alabama Supreme Court, this case is not appropriate for certification because the constitutionality question is not dispositive of plaintiff's claims against defendant jailers, as plaintiff's § 1983 claim against defendant jailers remains a viable claim. *See Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996) ("When substantial doubt exists about the answer to a material state law question *upon which the case turns*, a federal court should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law.") (emphasis added).

jail personnel "shall be entitled to the same immunities and legal protections granted to the sheriff," (*id.* at 4 (quoting Ala. Code § 14-6-1)), and assert that, by acting within the line and scope of their duty to carry out Sheriff Harris's statutory obligation to manage the daily operation of the Winston County Jail, they are entitled to immunity, (*id.*). However, acting within the line and scope of one's duty is not enough to guarantee immunity, as immunity is also conditioned on "acting in compliance with the law." § 14-6-1.

In *Sawyer v. Collins*, No. 2:12-0020-KD-M, 2012 WL 6052000 (S.D. Ala. Dec. 5, 2012), the District Court for the Southern District of Alabama certified the following question to the Alabama Supreme Court:[7]

> Alabama Code § 14–6–1 provides that persons, such as jail employees, who act or undertake duties at the direction and supervision of the sheriff are immune from state law claims to the same extent as a Sheriff "as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law[.]" How should this court interpret "acting in compliance with the law" in order to not render the grant of immunity meaningless or the phrase superfluous? Specifically, what "law" is encompassed by the requirement that a jail employee act in compliance with the law?

---

[7] The Eleventh Circuit certified a similar question, which the Alabama Supreme Court declined to answer. *See Johnson v. Conner*, 720 F.3d 1311, 1316 (11th Cir. 2013) ("[W]e certify the following questions to the Supreme Court of Alabama: . . . WHETHER ALABAMA CODE SECTION 14–6–1'S REQUIREMENT THAT JAILERS ACT 'IN COMPLIANCE WITH THE LAW' IN ORDER TO RECEIVE IMMUNITY IS INTENDED TO ENCOMPASS ONLY VIOLATIONS OF THE CRIMINAL CODE OR ALL VIOLATIONS OF ALABAMA LAW.").

*Id.* at *2. The court noted that "[t]he first requirement [of immunity]—acting within the line and scope of their duties—is the same requirement for a sheriff to receive immunity. However, there does not appear to be any requirement under Alabama law that requires a sheriff to act 'in compliance with the law' in order to receive immunity." *Id.* at *1. The Alabama Supreme Court declined to answer the certified question and left the federal district court "to its own devices with regard to the second requirement." *Sawyer v. Collins*, No. 2:12-0020-KD-M, 2012 WL 6046019 (S.D. Ala. Nov. 2, 2012); *see Sawyer v. Collins*, 129 So. 3d 1004 (Ala. 2013); *Sawyer v. Collins*, No. 2:12-0020-KD-M, 2013 WL 2458458 (S.D. Ala. June 6, 2013).

In Magistrate Judge Milling's Report and Recommendation, later adopted by Judge DuBose, the court thoroughly reviewed the legislative history of § 14-6-1 and determined that "there is no apparent information available as to how the specific language that was amended into the bill was derived." *Sawyer*, 2012 WL 6046019, at *10. The defendants in that case argued that "acting in compliance with the law" was a "clarification that jailers must act within the scope of their employment[,] as any other interpretation would render [§ 14-6-1] meaningless." *Id.* Defendant jailers also recognize this inconsistency by stating, that under an interpretation of "the law" that includes constitutional rights, "the application of § 14-6-1 immunity is dependent upon the absence of liability. Premising immunity upon the absence of liability undermines the very purpose of creating immunity, which is to bar a cause of action even in the presence of liability." (Doc. 35 at 8.)

14

Nevertheless, the court found that the words "acting in compliance with the law" had "additional meaning beyond the words 'acting within the line and scope of their duties.'" *Sawyer,* 2012 WL 6046019, at *10. The court went on to state:

> Sawyer has argued that Sanders and Collins were not acting in compliance with the law. More specifically, Plaintiff argues that the Defendants "acted beyond their authority by failing to follow nondiscretionary orders, rules, regulations, statutes, checklists, and/or policies."
>
> The Court reaches no particular finding with regard to this argument. However, the Court finds that Defendants Sanders and Collins have not met the second requirement of the statutes [the requirement of "acting in compliance with the law"]. This conclusion is reached after noting that the Court has already determined that a jury could find that Defendants were deliberately indifferent to Water's serious medical needs, rendering, at best, grossly inadequate care, violating the Inmate's clearly established rights to medical treatment. The Court finds that a jury finding that Sanders and Collins violated the Eighth Amendment, most likely, is not what the drafters of §§ 14–6–1 and 36–22–3[8] had in mind when they required that sheriff's employees "act[ ] in compliance with the law."

---

[8] Ala. Code § 36-22-3 provides in relevant part:

Any of the duties of the sheriff set out in subsection (a) or as otherwise provided by law may be carried out by deputies, reserve deputies, and persons employed as authorized in Section 14–6–1 as determined appropriate by the sheriff in accordance with state law. Persons undertaking such duties for and under the direction and supervision of the sheriff shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law.

Ala. Code § 36-22-3(b).

> Therefore, the Court specifically finds that the statutes in question, Ala. Code §§ 14–6–1 and 36–22–3, do not deprive this Court of subject-matter jurisdiction.

*Id.* at *10-11 (internal citations and quotations omitted).

The dissenting opinion in *Sawyer v. Collins*, 129 So. 3d 1004 (Ala. 2013), also provides some guidance in this case, as Justice Shaw stated, "It seems axiomatic that both criminal statutes and civil statutes, as well as constitutional precepts, are 'the law' for purposes of § 14-6-1." *Id.* at 1006. Unlike in *Sawyer* where the court faced the question of whether "policies and procedures for handling sick inmates propounded by a sheriff are, for purposes of § 14–6–1, 'law' that must be followed by jailers acting for and under the direction and supervision of the sheriff," *id.*, this case involves the potential violation of a constitutional right and a civil statute guaranteeing medical care. *See* U.S. amend. VIII; Ala. Code § 14-6-19 ("Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and *also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves*.") (emphasis added). The law defendant jailers allegedly violated seems to squarely fall within Justice Shaw's definition of "the law" for purposes of § 14–6–1.

In defendant jailers' Supplemental Brief, (Doc. 66), filed after the court held on a hearing on the foregoing Motions, defendant jailers argue that the express language of § 14–6–1 mandates a narrow interpretation of "acting in compliance with law." (Doc. 66 at

16

1-3.) Defendant jailers again focus on the language "*shall* be entitled to the *same* immunities and legal protections granted to the sheriff." (*Id.* at 1 (quoting § 14–6–1) (emphasis added).) However, as noted above, that language is conditioned by the language at issue: jail personnel "shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, ***as long as*** such persons are acting within the line and scope of their duties ***and are acting in compliance with the law***." § 14–6–1 (emphasis added). The plain language of the statute requires jail personnel to act in compliance with the law to receive the protection of § 14-6-1 immunity, and the statute does not limit that requirement to compliance with only certain types of law.

Defendant jailers also argue that the intent of the Alabama Legislature must be given effect, and because a broad interpretation of "acting in compliance with the law" would "render the § 14–6–1 immunity futile and meaningless," the Legislature clearly intended jail personnel to share the same immunity as sheriffs. (Doc. 66 at 11.) However, statutory interpretation begins "where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." *Koch Foods, Inc. v. Sec'y, U.S. Dep't of Labor*, 712 F.3d 476, 480 (11th Cir. 2013) (quoting *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 817 (11th Cir. 2004)) (internal quotations omitted). Although interpreting "acting in compliance with the law" to have a meaning independent of "acting within the line and scope of their duties" limits the application of § 14–6–1 immunity, this court begins and ends its analysis with the words of

17

the statutory provision and finds that § 14–6–1 imposes a requirement for jail personnel to act in compliance with law to receive immunity, just as the statute plainly states.

Therefore, the court cannot find, as defendant jailers urge, that plaintiff failed to state a claim for state law wrongful death upon which relief may be granted. Section 14-6-1 does not deprive the court of subject matter jurisdiction over plaintiff's state law claim against defendant jailers, and defendant jailers' Motion to Dismiss Count III is due to be denied.

## II. MOTION TO DISMISS FILED BY GEORGE LYRENE, M.D.

Defendant Lyrene moves to dismiss the two counts plaintiff brought against him— § 1983 deliberate indifference and state law medical malpractice—pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[9]

### A. Section 1983 Deliberate Indifference Claim

Lyrene argues that plaintiff has failed to state a claim for deliberate indifference because "plaintiff does not definitively state who failed to provide medical assistance," Hobbs's condition did not present a serious medical need "during the short time it is alleged

---

[9] Because Lyrene has stated no grounds for dismissing plaintiff's claims against him for lack of subject matter jurisdiction, the court will analyze Lyrene's Motion pursuant to only Rule 12(b)(6).

that Dr. Lyrene was aware of Hobbs's condition," and plaintiff failed to show a "subjective failure" or "a failure to act." (Doc. 39 at 4, 6.)

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotations omitted). To state a claim for deliberate indifference under 42 U.S.C. § 1983, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir.2007)). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (internal quotations omitted) (citation omitted). Alternatively, a plaintiff may show a serious medical need by proving that "a delay in treating the need worsens the condition." *Id.* (citation omitted). "In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (citation and quotations omitted).

Lyrene contends that Hobbs's condition did not present a serious medical need "during the short time it is alleged that Dr. Lyrene was aware of Hobbs's condition," but the Amended Complaint does not limit Lyrene's knowledge of Hobbs's condition to a "short time." Plaintiff clearly alleges that Hobbs's condition was obvious, stating that, from

19

December 31, 2012 to January 3, 2013, Hobbs's pain and swelling were obvious to anyone and clearly required immediate medical attention. It is also clear that Lyrene's alleged delay in treating Hobbs resulted in the worsening of his condition, as it resulted in Hobbs's death on January 3, 2013. Therefore, plaintiff has alleged a serious medical need under either test for the first prong of the deliberate indifference analysis.

As to the second prong of the analysis, Lyrene argues that plaintiff failed to show a "subjective failure" and "a failure to act." (Doc. 39 at 6). To establish deliberate indifference to a serious medical need, a plaintiff must show:  "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal citations omitted), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)).  "In cases that turn on the delay in providing medical care, rather than the type of medical care provided, we have set out some factors to guide our analysis. Where the prisoner has suffered increased physical injury due to the delay, we have consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Id.*

Defendant contends that plaintiff alleges only a "generalized failure to treat an abscessed tooth against all Defendants." (Doc. 39 at 6.) Setting aside plaintiff's conclusory allegations, including that Lyrene was "deliberately indifferent to Stephen Hobbs's serious medical needs" and "knew that, because of the serious nature of his illness, Hobbs needed

an antibiotic or that later he needed to be taken to a hospital for timely and appropriate medical treatment," (Doc. 30 ¶ 32; *see also id.* ¶¶ 31-35), plaintiff alleges that "[a]t some point prior to his release, George A. Lyrene, M.D. and/or agents of Correctional Managed Care Consultants, LLC observed Hobbs's [sic] through the window of a locked door but did not examine him in any way or refer him for any care," (*id.* ¶ 30). Plaintiff also alleges that "[l]eading up to the end of 2012, Hobbs filled out several medical request forms complaining about his toothache and requesting medical care to treat it," (*id.* ¶ 16), and that Lyrene "ignor[ed] medical forms filled out by Hobbs and ignor[ed] requests for medical treatment made by Hobbs through other defendants and jail personnel," (*id.* ¶ 38).

For plaintiff to state a deliberate indifference claim, plaintiff must allege that Lyrene possessed the requisite knowledge of a risk of serious harm to Hobbs and disregarded that risk. While plaintiff alleges that Lyrene and/or agents of CMCC observed Hobbs through a window "[a]t some point prior to his release,"[10] plaintiff does not allege that this viewing occurred at a time when Hobbs's condition was so severe as to be obvious, and therefore, likely to give Lyrene knowledge of the risk of harm to Hobbs.

However, plaintiff's additional allegations show subjective knowledge. Plaintiff alleges that Hobbs submitted several medical request forms complaining about his toothache

---

[10] Defendant contends that this allegation is insufficient because it does not "definitively state who failed to provide medical assistance." (Doc. 39 at 4.) However, pleading in the alternative is not a ground for dismissing plaintiff's Amended Complaint.

toward the end of 2012 and requested medical care through jail personnel and that Lyrene ignored Hobbs's medical forms and ignored Hobbs's requests for treatment conveyed to Lyrene through other jail personnel. From these allegations, the court can infer that Lyrene read multiple medical request forms plaintiff submitted and received requests for Hobbs's treatment from jail personnel and intentionally chose not to examine Hobbs. Although any of the individual complaints regarding Hobbs's toothache may not have given Lyrene knowledge of Hobbs's serious medical need, the repeated complaints about Hobbs's toothache, and Lyrene's choice not to examine plaintiff, are sufficient factual allegations to show subjective knowledge. "Under section 1983 'knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." *Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013) (quoting *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988)). The court finds that plaintiff alleged an intentional failure to render care, such that Lyrene's inaction constitutes deliberate indifference to Hobbs's serious medical need.

To prove the final requirement of causation, plaintiff need only allege Lyrene's "personal participation in the constitutional violation." *Goebert*, 510 F.3d at 1327. Because plaintiff alleged that Lyrene personally saw multiple medical forms and received verbal requests for Hobbs's medical treatment, and thereafter failed to examine or treat Hobbs, plaintiff has sufficiently alleged causation and has stated a claim for deliberate indifference under § 1983.

**B. State Law Medical Malpractice Claim**

Lyrene next argues that the state law medical malpractice claim should be dismissed because plaintiff failed to state her claim with the specificity mandated by § 6-5-551 of the Alabama Medical Liability Act ("AMLA"). (Doc. 39 at 9.) Lyrene focuses his argument on plaintiff's failure to provide "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff," (Doc. 39 at 7 (quoting Ala. Code § 6-5-551)), and to allege "the date, time or manner, if at all, Dr. Lyrene purportedly violated the standard of care," (Doc. 39 8).

Section 6-5-551, which governs plaintiff's state law medical malpractice claim, provides:

> In any action for injury, damages, or wrongful death ... against a health care provider for breach of the standard of care, ... [t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts..... Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551. The Alabama Supreme Court has interpreted the requirement to provide "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff" as requiring "fair notice of the allegedly negligent act:"

> [W]hen a plaintiff files a complaint alleging that a health care provider breached the standard of care owed to the plaintiff, although every element of the cause of action need not be stated with particularity, the plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm. If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary "detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff."

*Mikkelson v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993) (quoting § 6-5-551); *see also Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180, 1188 (S.D. Ala. 2006). In *Mikkelson*, the court found the plaintiffs' complaint satisfied the pleading requirements of § 6-5-551, where the complaint alleged that a doctor failed to warn his patient about the dangers of driving while under the influence of certain medication over a period of "several weeks." *Mikkelson*, 619 So. 2d at 1384-85; *see Betts*, 435 F. Supp. 2d at 1188-90 (finding, pursuant to a fraudulent joinder inquiry, that the plaintiff's complaint alleging a failure to warn throughout a treatment period lasting approximately seven years was similar to the "simple allegations [that] satisfied the pleading requirements of Section 6-5-551 for a claim of failure to warn" in *Mikkelson*). While the complaint did not appear to state a specific place, it stated that the failure to warn occurred in the context of medical treatment. *Id.*

Plaintiff alleges Hobbs submitted several medical request forms leading up to the end of 2012 and that Lyrene violated his "duty to use such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice" by

ignoring Hobbs's medical request forms and requests for treatment made by Hobbs through other individuals and by failing to treat Hobbs's abscessed tooth. (Doc. 30 ¶¶ 37-38.) First, when a plaintiff alleges an omission as opposed to an act, allegations providing date, time, and place are not required. See *Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180 (S.D. Ala. 2006), stating:

> The bulk of Lilly's thin statutory argument is dedicated to the proposition that the complaint fails to provide "the date, time, and place of the act or acts." In the first place, the obligation to address time and location applies to acts, not omissions, and the plaintiff's claim of failure to warn concerns an omission, not an act. The Alabama Legislature plainly understood the difference between acts and omissions, since Section 6–5–551 uses the term "act or omission" three times, such that its use of "act or acts" cannot easily be disregarded as unintended or inconsequential. Limiting the requirement to acts also makes sense because, while an act usually occurs at a specific site and at a specific time that can be readily identified, an omission is almost always ongoing and not easily described in terms of a specific time and location.

*Id.* at 1189. Because plaintiff is alleging liability based on an omission rather than an act, plaintiff need not provide a specific date or time in the approximate six-month time span in which Hobbs developed a debilitating abscessed tooth. Plaintiff does state, however, that Hobbs submitted several medical request forms "[l]eading up to the end of 2012," which limits the time frame in which Lyrene allegedly ignored those requests, considering Hobbs died on January 3, 2013. Plaintiff also alleges that the Winston County Jail is the place where Lyrene's alleged omissions occurred.

Additionally, § 6-5-551 states that a plaintiff shall include date, time, and place "when feasible and ascertainable." Hobbs had personal knowledge of when he submitted medical request forms and made verbal requests for treatment through jail personnel, but given Hobbs's death, plaintiff may not be able to currently determine the timing of those requests for medical care. *See Warren v. Harden*, 2:12-cv-228-MEF, 2013 WL 1336990, at *3 (M.D. Ala. Mar. 29, 2013) ("Moreover, because Mr. Warren passed away, the exact times at which he allegedly made his requests for medical treatment and medication and the exact times at which the QCHC Defendants allegedly disregarded them would have been difficult for Plaintiff to ascertain at the time she filed her Amended Complaint.").

For the same reasons that "an omission is almost always ongoing and not easily described in terms of a specific time and location," Lyrene's alleged failure to examine or treat plaintiff was an ongoing event likely incapable of detail more specific than that provided in the Amended Complaint. Plaintiff alleges that Hobbs submitted medical request forms complaining about his toothache leading up to the end of 2012 and requested treatment through jail personnel and that Lyrene's negligent and/or wanton omission was ignoring these requests and providing Hobbs no treatment for his serious medical need in violation of Lyrene's "duty to use such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice." The court finds that plaintiff has given Lyrene "fair notice" of his alleged omissions such that plaintiff's Complaint satisfies § 6-5-551 and states a claim for state law medical malpractice against

26

Lyrene. *See Warren*, 2013 WL 1336990 at *3 (finding that the plaintiff's allegations met the § 6-5-551 pleading standard where plaintiff alleged all defendants ignored the decedent's request for medical treatment, failed to provide the decedent with his medication, and failed to determine the decedent's medical history, all over a four-day period); *Williams v. Women's Healthcare of Dothan, P.C.*, No. 1:09-CV-873-WKW [WO], 2010 WL 4628095, at *5 (M.D. Ala. Nov. 8, 2010) (finding the plaintiff's allegations gave the defendant "fair notice" where plaintiff alleged "the medical staff with Women's Healthcare violated the 'normal standard of care in the medical community' by leaving her on high blood pressure medication during her pregnancy," which lead to the stillborn death of her infant).

Furthermore, the court notes that plaintiff remains under an obligation to "amend h[er] complaint timely upon ascertainment of new or different acts or omissions upon which h[er] claim is based." § 6-5-551. *See Price v. Houston Cnty. Healthcare Auth.*, No. 1:15-CV-200-WKW, 2015 WL 2029467, at *2 (M.D. Ala. May 1, 2015) ("Defendants suggest that the statute's requirement that Plaintiff include specifics of '*each* act and omission' precludes her from proceeding on an incomplete or 'non-exhaustive' set of facts, but the AMLA contemplates the prompt submission of an amended pleading on the basis of 'new or different acts or omissions,'" and thus, "[d]efendants have not shown that the use of the word 'non-exhaustive' in an AMLA complaint is a basis for dismissal.").

Lyrene also argues that, while plaintiff seeks compensatory and punitive damages under the state law medical malpractice claim, any recovery for compensatory damages is

27

barred, as a plaintiff suing for wrongful death in Alabama may recover only punitive damages. (Doc.39 at 9.) Plaintiff agrees, and therefore, the court need not discuss this issue further. (*See* Doc. 43 at 12.)

## **CONCLUSION**

The court finds that Defendants Powell, Whitman, Hardy, Lolley and Baker's Motion to Dismiss Count III of the Amended Complaint, (Doc. 34), is due to be denied. Defendants Powell, Whitman, Hardy, Lolley, and Baker's Motion to Dismiss Count III of the Amended Complaint and First Amendment to Amended Complaint, (Doc. 53), is due to be granted as to Count IV of plaintiff's First Amendment to Amended Complaint and denied as to Count III of plaintiff's Amended Complaint, and the Motion to Dismiss of George A. Lyrene, M.D., (Doc. 38), is due to denied. An order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 29th day of September, 2015.


*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE